■ In the Matter of JENNIFER G. and Another. COMMISSIONER OF SOCIAL SERVICES, Appellant, JOSEPHINE B. Respondent. — In a proceeding pursuant to article 10 of the Family Court Act, petitioner appeals from an order of the Family Court, Kings County (Palmer, J.), dated August 15, 1984, which, after a hearing pursuant to section 1028 of the Family Court Act, *inter alia,* directed the petitioner to return the children to their mother.

Order reversed, without costs or disbursements, application pursuant to section 1028 of the Family Court Act denied, and matter remitted to the Family Court, Kings County, for an immediate fact-finding hearing pursuant to section 1044 of the Family Court Act, and further proceedings consistent herewith.

In this child protective proceeding, the two children, Jennifer G. and Julia G. were taken into temporary custody by the New York City Department of Social Services (department) on June 18, 1984, after the principal of the children's school notified the

department that the children appeared abused when they arrived at the school, and after an investigation by a department caseworker. This was the second occasion that the school reported that the children had been abused. The respondent mother subsequently applied under section 1028 of the Family Court Act for the return of the children and the Family Court granted the application subject to an order of protection. We disagree.

The evidence adduced by petitioner at the hearing demonstrated that the return of the children to their mother presents an imminent risk to the children's health (see Family Ct Act, § 1028, subd [b]). The respondent mother admitted that she "spanked" her children with a belt and her hands, which sometimes resulted in "[l]ittle bruises" and "marks". School attendance records show that Jennifer G. was absent for 50½ days during the 1983-1984 school year, and that Julia G. was absent for 65½ days during that year. This evidence tends to support petitioner's contention that the respondent mother would keep the children out of school for a number of days after they were beaten in order to enable their bruises and marks to heal. Moreover, the maternal grandmother testified that her daughter beat the children with a belt, causing marks on their legs. The department caseworker testified that Julia G. had marks under her eyes, marks on her thighs, neck and forehead, and a backward "C" mark on her back. There also was a mark on Julia G.'s arm, which Jennifer G. explained was an old bite mark caused by her mother. The children's godmother testified that there was puffiness and swelling around Julia G.'s eyes. Furthermore, respondent mother told the caseworker that she could not help herself because she was an abused child. Respondent mother's explanation for the children's injuries and absences from school are, in our view, inherently incredible. Under these circumstances, the evidence established a substantial probability of child abuse. Thus, the safer course in the case at bar is not to return the children to the mother until an immediate fact-finding hearing to determine whether the children are abused or neglected is held (see, e.g., *Matter of Bobby M.,* 103 AD2d 777; *Matter of Jasmine H.,* 88 AD2d 996). Pending any new determination, the visitation arrangements already in place should continue. Titone, J. P., Lazer, Mangano and Niehoff, JJ., concur.