OPINION OF THE COURT
Paula J. Hepner, J.
The question before this court, apparently one of first impression, is whether the release of this child to the custody of her mother, upon the filing of a child protective proceeding, constitutes a "removal” under section 1028 of the Family Court Act which entitles the respondent father, who was awarded joint custody of the child, to a hearing for the child’s immediate return. Respondent Henri H. asserts his custodial rights under the joint custody order as the basis for his right to this hearing. The Commissioner of Social Services and the Law Guardian first argue that releasing the child to the temporary custody of the nonrespondent mother, with whom she has resided since birth, does not constitute a "removal”. Even if it were considered such, they maintain that the respondent is not asking for the child to be returned to his physical custody, but rather, that the court restore his weekend visitation rights, the impairment of which is not litigable as a "removal” under Family Court Act § 1028.
Family Court Act § 1027 authorizes the court to enter preliminary orders, after the filing of a neglect petition, when a child’s interests require protection pending a final order of disposition. If, pursuant to Family Court Act § 1027 (b), the court determines that "removal” is necessary to avoid imminent risk to the child’s life or health, the child may be remanded to the care and custody of the Commissioner of Social Services, or may be placed in the custody of a suitable person other than the respondent.
When a court directs a child’s removal under Family Court Act § 1027, Family Court Act § 1028 gives the parent or person legally responsible for the child a right to a hearing to determine whether the child should be returned. The concept of "removal” defined in Family Court Act § 1024 (a) and used throughout the Family Court Act is twofold: removal from the child’s place of residence, or removal from the care and custody of the parent or other person legally responsible for *347 the child’s care.[1] Similarly, the concept of "return” used throughout these same sections of the Family Court Act envisions restoration of the child to the former place of residence or to the care and custody of the former caretaker.
Henri H. is presently before the court as a respondent in a child protective proceeding commenced under article 10 of the Family Court Act filed on January 26, 1993. The child’s parents, however, were first known to the court in 1992 when Henri H. petitioned for joint custody of his two-week-old daughter. On October 13, 1992, the child’s mother and Henri H. consented to the entry of an order awarding joint custody to both parties, physical custody of the child to the mother, and visitation to the father.[2] By the terms of the order, respondent Henri H. has the child the first three weekends of every month from Friday at 7:00 p.m. to Sunday at 8:00 p.m. in addition to specified holidays, birthdays, and the entire months of July and August.[3]
An order for joint legal custody allows parents to share responsibilities for and control of matters affecting the "day-by-day, year-by-year care, growth and nurturing of their children”. (Seago v Arnold, 91 AD2d 835, 836 [4th Dept 1982].) It envisions a working relationship similar to that which "parents have with each other and their children in familial situations not interrupted by separation or divorce.” (Supra, at 836.) Joint custody awards, such as the one at issue herein, may provide that children spend weekdays with one parent and weekends with the other. (Braiman v Braiman, 44 NY2d 584, 588 [1978]; Harmon v Harmon, 173 AD2d 98 [1st Dept 1992].) They may designate some children to live with their mother while others reside with their father. (Roome v Roome, 87 AD2d 798 [1st Dept 1982].) In other instances, the parents may share physical custody by moving into and out of the *348 children’s residence on an agreed upon schedule. (Matter of Hiser v Hiser, 175 AD2d 353 [3d Dept 1991].) The permutations and combinations are as vast as the human imagination.
Under the October 1992 order, excluding holidays and birthdays, Alexandria’s residence was for 10 months (less 20 weekend days) of the year, 5 days with the mother and 2 days with the father. For 2 months (less 8 weekend days) of the year, her residence was with her father. It is immaterial whether the respondent’s time with the child was denominated "share physical custody” or "visitation” since the October 1992 order preserved both the respondent’s legal and custodial relationship to the child.[4] It is respondent Henri H.’s status as a legal and physical custodian of the child that activates the rights under Family Court Act § 1028. (Matter of Michael A., 149 Misc 2d 595 [Fam Ct, Bronx County 1990].)
The Commissioner of Social Services incorrectly argues that no "removal” occurred here since the respondent’s rights were interrupted prior to the filing of the article 10 proceeding. On January 4, 1993 the child’s mother moved to modify the October 1992 order, alleging that respondent Henri H. abused or neglected the child while under the influence of alcohol. On January 6, 1993 the court temporarily suspended the respondent’s physical custody, for the safety of the child, and directed an investigation by the Child Welfare Administration. The court did not issue a temporary order of custody in favor of the mother pending the outcome of the investigation. That would have constituted a transfer of custody and, " '[a]s a general rule, it is error as a matter of law to make an order respecting custody based on controverted allegations without having had the benefit of a full hearing’.” (Robert C. R. v Victoria R., 143 AD2d 262, 264 [2d Dept 1988]; Biagi v Biagi, 124 AD2d 770 [2d Dept 1986].)
This child protective proceeding was filed on January 26, 1993, as an outgrowth of the investigation ordered by the *349 court. Based on the allegations of alcohol abuse, the court released the child to temporary custody of her mother and made a finding, pursuant to Family Court Act § 1030, that supervised visitation was warranted. Respondent’s right to a section 1028 hearing was triggered once the neglect petition was filed and the court entered an order for supervised visitation and an order releasing the child to the temporary, sole custody of the mother. It is the combined effect of these orders which contravened the respondent’s joint custody rights.
This court believes that Family Court Act § 1028 is not available to challenge restrictions on a noncustodial parent’s previously established visitation rights, and the court does not intend to create such by this decision. Family Court Act § 1030 was enacted to assure that a respondent, whose child is "removed”, has reasonable and regularly scheduled visitation during the pendency of the child protective proceeding. Upon the filing of an article 10 proceeding, the court may continue, unencumbered, the existing visitation rights of a noncustodial parent, may reduce the visitation, or make an order for supervised visitation when the court makes a finding that it would be in the child’s best interests. Whether a parent is entitled to a hearing before such orders are made is not specified in the statute.
For all of the foregoing reasons, respondent Henri H.’s motion for a hearing pursuant to Family Court Act § 1028 is granted and the matter is adjourned to October 27, 1993 for the hearing.

. Numerous appellate decisions make it clear that these statutes are concerned with the State’s power to disrupt a parent’s physical custody of a child (Matter of Forrest G., 180 AD2d 550 [1st Dept 1992]; Matter of Lashawn G., 161 AD2d 712 [2d Dept 1990]; Matter of Darnell D., 139 AD2d 610 [2d Dept 1988]; Matter of Bobby M., 103 AD2d 777 [2d Dept 1984]; Matter of Corey T., 81 AD2d 785 [1st Dept 1981]).

. The use of the words "physical custody” and "visitation” in the October 1992 order to describe what is, in essence, periods of shared physical custody with one parent having primary physical custody, does not transform the otherwise valid order of joint custody into one for sole custody to the mother and visitation to the father.

. During the summer months, the child’s mother would receive visitation on alternate weekends from Friday at 7:00 p.m. to Sunday at 8:00 p.m.

. Respondent Howell cites Matter of Juan R. v Necta V. (55 AD2d 33 [2d Dept 1976]) as support for his motion. In Juan R., the Appellate Division determined that the Family Court had jurisdiction under Family Court Act § 651 to entertain a petition for visitation even though the statute, as then enacted, referred only to petitions for custody. The Court ruled that visitation is a form of " 'quasi’ ” or " 'limited’ ” custody (at 35) and that "implicit in the constitutional right to determine 'custody’ ” is also the right of the Family Court to determine matters involving visitation (at 37). The principles underlying this decision strengthen this court’s analysis of whether the term "visitation,” when used in the context of joint custody situations, doesn’t simply mean "limited custody”.